UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CHARLES PARHAM,                                             :
                                                            :       **DECISION AND ORDER**
                              Petitioner,                   :       11-CV-477 (WFK)
                                                            :
        -against-                                           :
                                                            :
PATRICK GRIFFIN, SUPERINTENDENT,                            :
                                                            :
                              Respondent.                   :
                                                            :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 by Charles Parham ("Petitioner"). Following a jury trial in New York state court, Petitioner was convicted of murder in the second degree. Petitioner's direct appeal of the conviction was denied by the New York State Supreme Court, Appellate Division, Second Department ("Second Department"). The New York Court of Appeals denied Petitioner's request for leave to appeal from the Second Department's decision. Now, Petitioner seeks federal habeas relief in this Court on four grounds: (1) that the lower court wrongly denied his *Payton, Wade, Dunaway, Mapp,* and *Huntley* applications, (2) that the trial court's denial of Petitioner's request to call a witness on his own behalf violated his Sixth Amendment right of confrontation, (3) that the Petitioner should have been granted a mistrial due to the improper comments made before the jury by a prosecution witness, and (4) that the jury's guilty verdict should have been set aside because the evidence was legally insufficient to establish guilt beyond a reasonable doubt. For the reasons below, the Court finds that Petitioner's claims are either without merit or not cognizable under federal *habeas* review. Accordingly, the petition for the writ of habeas corpus is denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

The District Attorney of Kings County affirms that on September 5, 2001, Petitioner Parham, Keyron Jackson ("Jackson") and Floyd Taborn ("Taborn"), also known as James Taylor, entered the Brooklyn, New York, residence of Gerald Green. Petitioner, Jackson, and Taborn were each armed with a gun and had planned to steal money and drugs from Green.

1

Petitioner went upstairs in Green's home, where he found two of Green's children and Anita Jones. One of the children fled downstairs to his mother, Beverly Gilliard, crying that Petitioner had a gun. Petitioner then moved the other child and Jones to a bedroom, went into Green's bedroom (where Green's six-year-old daughter had been sleeping, but ran from the room crying after Petitioner's entry), pistol-whipped him in the head, and demanded money and drugs. When Green said that he had none, either Petitioner or Jackson shot Green fatally in the head. Dkt .7, Response to Order to Show Cause, Affirmation of Sholom J. Twersky ("Twersky Aff."), ¶4. Petitioner was arrested at the home of his sister, Ayisha Parham, on September 9, 2001, after she consented to police entry into her apartment. Dkt.7, Response to Order to Show Cause, Memorandum of Law in Opposition to Writ of Habeas Corpus ("Opp."), 11. Ms. Parham then told the police that, prior to Petitioner's arrest, she had heard from her brother Larry that Petitioner had been involved in Green's murder. Opp., 13.

Petitioner denied involvement in the invasion of Green's home or in the murder of Green, claiming that he was with a woman named Penny at the time. Dkt. 7-2, Brief of Defendant-Appellant submitted to the Second Department ("Brief of Def.-Appel."), at 13.

Petitioner was charged in Kings County with four counts of murder in the second degree, two counts of burglary in the first degree, one count of burglary in the second degree, two counts of attempted robbery in the first degree, one count of attempted robbery in the second degree, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree. On February 19, 2003, Taborn agreed to cooperate with the Kings County District Attorney's Office and testify against Petitioner, pursuant to an agreement which was later amended on October 15, 2004. Under the cooperation agreement, Taborn would plead guilty to murder in the second degree, attempted robbery in the first degree,

2

and burglary in the first degree. If Taborn fully cooperated and testified in Petitioner's case—and cooperated with North Carolina and Virginia authorities in an unrelated case—Taborn's plea to second-degree murder would be vacated, and he would be sentenced to twelve years in prison for attempted robbery and burglary. If Taborn failed to cooperate fully, his plea to second-degree murder would stand and the prosecutors would recommend a sentence of twenty-five years to life imprisonment. Twersky Aff. at ¶8; Brief of Def.-Appel. at 5.

Justice Cheryl Chambers of the Supreme Court of Kings County conducted a combined *Dunaway*[1]/*Payton*[2]/*Rodriguez*[3]/*Wade*[4]/*Mapp*[5]/*Huntley*[6] hearing on May 27, 2003, and on June

---

[1] A *Dunaway* hearing is used "to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial." *Montgomery v. Wood*, 727 F. Supp. 2d 171, 185-186 (W.D.N.Y. 2010); *see Dunaway v. New York*, 442 U.S. 200 (1979); *Jones v. LaValley*, 11-CV-6178, 2014 WL 1377589, at *22 & n.45 (S.D.N.Y. Apr. 3, 2014) (Peck, Mag. J.).

[2] The U.S. Supreme Court in *Payton v. New York*, 445 U.S. 573, 589-90 (1980) held that even where there is probable cause for an arrest, a warrantless arrest of an individual in his or her home violates the Fourth Amendment absent exigent circumstances or consent to entry. The New York Court of Appeals has held that under the New York State Constitution, *Payton* violations require suppression of post-arrest statements made outside the presence of counsel, *People v. Harris*, 570 N.E. 2d 1051, 1052-53 (N.Y. 1991), but not the suppression of post-arrest lineup identifications, *People v. Jones*, 2 N.Y. 2d 235, 242-245 (N.Y. 2004); *see also Aviles v. Capra*, 13-CV-1153, 2014 WL 4805036, at *11 (E.D.N.Y. Sept. 26, 2014) (Ross, J.).

[3] The "confirmatory exception" to the N.Y. CPL §710.10 *et seq.*, notice and hearing requirements for use of suggestive pretrial identification procedures cannot be applied without a hearing on the question of the exception itself, where there is no longstanding mutual familiarity between the witness and the defendant. *People v. Rodriguez*, 593 N.E.2d 268, 272-73 (N.Y. 1992). A *Rodriguez* hearing "is held when the People contend that the witness had 'sufficient familiarity' to make it irrelevant whether the identification procedure was unduly suggestive." *Covington v. Warden, Five Points Corr. Facility*, 11-CV-8761, 2014 WL 7234820, at *17 (S.D.N.Y. Dec. 8, 2014) (Maas, Mag. J.) (citing *Hankins v. Smith*, 03-CV-5404, 2008 WL 4601000, at *12 (S.D.N.Y. Oct. 15, 2008)).

[4] *U.S. v. Wade*, 388 U.S. 218, 232 (1967). A *Wade* hearing is held to determine if a witness's identification is tainted by unduly suggestive identification procedures. *See, e.g., Maldonado v. Burge*, 697 F. Supp. 2d 516, 521, 529-31 (S.D.N.Y. 2010) (Holwell, J.).

3

21, July 6, and October 18, 2004. Dkt. 11-2, Decision and Order of Justice Cheryl E. Chambers ("Hearing Order"). At this hearing, Ms. Parham testified that she never consented to police entry into her apartment and that she never had, nor told the police that she had, any knowledge prior to Petitioner's arrest that Petitioner was wanted for Green's murder. Hearing Order at 2-3.

With respect to the *Dunaway* question, Justice Chambers found that the police had probable cause to arrest Petitioner. Hearing Order at 7. Justice Chambers cited *People v. Baptiste*, 608 N.Y.S.2d 266 (N.Y. App. Div. 2nd Dep't 1994) in support of her finding that a photographic identification by an eyewitness constitutes probable cause. Justice Chambers further found that there was no *Payton* violation because the police detectives' testimony at the hearing—stating that Ms. Parham freely consented to police entry into her apartment—was more credible than Ms. Parham's. In support of this determination, Justice Chambers cited Ms. Parham's self-contradiction on the subject of whether or not she recognized the men at her door as police officers, the "implausible" nature of her account of her interview with Detective Timothy Duffy at the precinct, the "evasiveness" of her demeanor on cross-examination, and the "wealth of convincing detail" in Detective Duffy's account of what she told him. Hearing Order at 8.

On the *Wade* and *Rodriguez* questions, Justice Chambers found that the police's identification procedures were not unduly suggestive and that Taborn, being Petitioner's cousin

---

[5] *Mapp v. Ohio*, 367 U.S. 643 (1961). "A *Mapp* hearing is called for when the defendant alleges that physical evidence sought to be used against him or her was obtained illegally by law enforcement officers and is inadmissible at trial." *Montgomery*, 727 F. Supp. 2d at 186; *see also Jones*, 2014 WL 1377589 at *22.

[6] In *People v. Huntley*, 204 N.E.2d 179, 183 (N.Y. 1965), the New York Court of Appeals held that a trial court must find the voluntariness of a defendant's statement beyond a reasonable doubt before it can be submitted to a jury, and that the burden of showing voluntariness is on the People.

and having frequent contact with him, knew him sufficiently well to be "impervious to any police suggestion." Hearing Order at 8-9. On the *Huntley* question, Justice Chambers found that Petitioner's statement to the police was voluntary, and on the *Mapp* question, she found that there was no illegal seizure of physical evidence from Petitioner. Hearing Order at 9.

Petitioner's first trial ended in a mistrial on December 22, 2004 because of a deadlocked jury. Twersky Aff. at ¶7. Petitioner's second trial began on April 11, 2005 and ended on April 26, 2005. He was found guilty of second-degree murder under New York Penal Law § 125.25(3) on May 2, 2005 and sentenced, as a persistent violent felony offender, to a term of imprisonment of twenty-five years to life imprisonment on June 9, 2005. Twersky Aff. at ¶¶9-11. Petitioner then appealed from his conviction to the Second Department, raising the following claims: (1) that the trial court erred in denying his *Payton*, *Wade*, *Dunaway*, *Mapp*, and *Huntley* applications, (2) that Petitioner's right to present a witness on his own behalf was violated, (3) that the trial court erred in denying Petitioner's request for a mistrial in his second trial, (4) that the trial court erred in denying Petitioner's motion to set aside the verdict, and (5) that the sentence of the trial court was excessive. Brief of Def.-Appel.at *i*, 3.

The Second Department affirmed Petitioner's conviction, holding that Petitioner's arrest was lawful, that the physical evidence seized from Petitioner was admissible, that Petitioner's statement to police was admissible, and that the trial court did not err in excluding Petitioner's witness because the only purpose of the witness's testimony was to impeach a prosecution witness on collateral matters. *People v. Parham*, 904 N.Y.S.2d 144 (N.Y. App. Div. 2nd Dep't 2010). Furthermore, the Second Department concluded that the Petitioner's claims based on *Wade* and *Rodriguez* were meritless. *Id.* at 145-46. On the mistrial question, the Second Department found that a curative instruction regarding improper comments from a prosecution

witness was sufficient to protect Petitioner's rights, and that the trial court was correct to deny Petitioner's application for a mistrial on double jeopardy grounds. *Id.* at 146. The Second Department further found that the Petitioner's motion to set aside the verdict on the grounds that the evidence was legally insufficient to establish guilt beyond a reasonable doubt was unpreserved for appellate review. *Id.* Nevertheless, the Second Department reviewed the question and found the evidence legally sufficient to establish Petitioner's guilt beyond a reasonable doubt. *Id.* Finally, the Second Department found that the sentence was not excessive. *Id.* at 147.

Judge Jones of the New York Court of Appeals denied Petitioner's request for leave to appeal on November 9, 2010. *People v. Parham*, 939 N.E.2d 816 (N.Y. 2010).

On January 28, 2011, Petitioner filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of New York. Dkt. 1, Petition for Writ of *Habeas Corpus* ("Petition"). Petitioner makes four claims in his *habeas* petition: (1) that the trial court wrongly denied his *Payton, Wade, Dunaway, Mapp,* and *Huntley* applications, (2) that the trial court's denial of Petitioner's request to call a witness on his own behalf violated his Sixth Amendment right to confront the witnesses against him, (3) that the Petitioner should have been granted a mistrial due to the improper comments made before the jury by a prosecution witness, and (4) that the jury's guilty verdict should have been set aside because the evidence was legally insufficient to establish guilt beyond a reasonable doubt. Petition at ¶22. An Order to Show Cause was issued on February 2, 2011. Dkt. 2. The Kings County District Attorney's Office opposed the petition in an affirmation and memorandum of law on May 18, 2011. Dkt. 7. Petitioner filed a reply on June 9, 2011. Dkt. 12.

# ANALYSIS

This Court's review of Petitioner's petition is governed by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The Court considers each claim in turn. Upon such consideration, the Court finds that Petitioner's claims are either meritless or not cognizable on *habeas* review.

## A. Petitioner's *Dunaway, Payton, Wade, Mapp* and *Huntley* Claims

### 1. Petitioner's *Dunaway, Mapp* and *Payton* Claims Were Fully And Fairly Litigated in State Court.

Petitioner claims that he was arrested without probable cause, and that therefore any statements and physical evidence obtained as a result of that arrest should be suppressed under *Dunaway* and *Mapp*. Furthermore, Petitioner claims that he was arrested after a warrantless entry into his sister's home without consent or exigent circumstances, and that therefore any post-arrest statements made outside the presence of counsel should be suppressed. These claims are subject to the standard articulated in *Stone v. Powell*, 428 U.S. 465, 494 (1976), which states that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

There are two exceptions to the *Stone v. Powell* standard: (1) where the state provides no corrective process at all for Fourth Amendment violations, or (2) where the defendant was precluded from using a corrective process because there was an "unconscionable breakdown in the [State's] process." *Capellan v. Riley*, 975 F. 2d 67, 70 (2d Cir. 1992) (citing *Gates v.*

7

*Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)); *see also McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir. 1983)). New York State's corrective process for evidence obtained through illegal search and seizure, as defined in Article 710 of the New York Criminal Procedure Law, has been found facially adequate by federal courts. *See, e.g., Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) (Glasser, J.) (noting that petitioner's only method of raising his Fourth Amendment claim before the federal court would be via the second *Stone v. Powell* exception). Furthermore, there was no "unconscionable breakdown" in this process in Petitioner's case. Petitioner had a suppression hearing where his counsel cross-examined the state's witnesses and called Ayisha Parham to testify on Petitioner's behalf. The trial court determined that Ms. Parham, who claimed that she did not consent to police entry into her apartment, was a less credible witness than the police detectives. This determination was based on statements the court found contradictory and implausible, as well as on what the court perceived to be Ms. Parham's "evasiveness" and on the "wealth of convincing detail" in Detective Timothy Duffy's account. Hearing Order at 8. The trial court also considered and rejected, based on *Baptiste*, 608 N.Y.S.2d at 266-67, Petitioner's claim that he was arrested without probable cause. Finally, the trial court considered and rejected Petitioner's *Mapp* claim, relying on *People v. Mahoney*, 400 N.Y.S.2d 257, 259 (N.Y. App. Div. 4th Dep't 1977) in support of her finding that once Petitioner was lawfully taken into custody, a search of his personal effects was warranted. Hearing Order at 9. Petitioner appealed the trial court's decisions to the Second Department, which rejected them after review.

New York State thus provided Petitioner with full access to its procedures to correct Fourth Amendment violations in obtaining evidence, eliminating this Court's ability to review the merits of those determinations.

## 2. Petitioner's *Wade* Claim is Without Merit.

This Court's review of Petitioner's *Wade* claim is governed by AEDPA, which prohibits federal *habeas* relief with respect to claims that have been fully adjudicated on the merits in state court unless the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (West 2015). Determinations of fact by state courts are presumed correct unless shown otherwise by the petitioner using "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Here, Petitioner's *Wade* claim has been fully adjudicated on the merits in state. Therefore, the AEDPA standard applies.

A State court decision is "contrary to...clearly established Federal law, as determined by the Supreme Court" if "the state court applies a rule that contradicts the governing law set forth in our cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S 362, 404-406 (2000). Furthermore, an "unreasonable" application of clearly established federal law must be more than simply incorrect or erroneous. *Id.* at 410-411. The inquiry "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The federal law applicable to Petitioner's *Wade* claim comes from the *Wade* decision itself and from *Neil v. Biggers*, 409 U.S. 188 (1972). In *Wade*, the Supreme Court listed a

number of factors that may make lineup and identification procedures unduly suggestive such as tacit hints from police officers, obvious visible differences (such as racial differences, or extreme height differences) between the defendant and the non-suspects, putting distinctive clothing on the defendant, or having the witness see the defendant alone or in jail. *Wade*, 388 U.S. at 232-233. The Supreme Court more fully addressed the issue of suggestive identification in *Biggers*, 409 U.S. at 196-197, holding that even a suggestive identification procedure would not be a ground for overturning a conviction unless the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Simmons*, 390 U.S. at 384; *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (stating the standard and noting some of the relevant factors in determining fairness). Even if a procedure is suggestive, the Supreme Court has stated that the "totality of the circumstances" might indicate that the identification is reliable; the relevant circumstances include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200.

Petitioner claimed that the police procedures here were unduly suggestive because one of the six witnesses, the victim's child, identified a person other than Petitioner in the lineup. After the lineup, Detective McGiveney showed the child the numbers of each person in the lineup once more, believing the child to be confused about the numbers. After being shown the numbers, the child said that the person in the fourth position (Petitioner) was the person who shot his father. Brief of Def.-Appel. at 26. Furthermore, Petitioner claimed that there were differences in height and weight between Petitioner and the others in the lineup. Brief of Def.-Appel. at 27.

Although the Supreme Court in *Wade*, 388 U.S. at 233, noted that a prior identification may be invalid if "the other participants in [the] lineup were grossly dissimilar in appearance to the subject," the Second Circuit has explained that "there is no requirement that even in lineups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be." *United States v. Reid*, 517 F.2d 953, 965 n.15 (2d Cir. 1975). Here, the trial court found that the police identification procedures used with the child witness were not unduly suggestive, that the photo array used to identify Petitioner before arrest "contained pictures of persons similar in appearance to [Petitioner]," and that "the fillers in the lineup were also similar to the defendant in appearance." Hearing Order at 9-10. The *Biggers* factors weighing in favor of the reliability of the identifications here include the witnesses' ability to view Petitioner during the crime; the certainty of some witnesses, including "CI1," "CI3," and "CI5"; and the short length of time between the crime (which took place on September 5th, 2001) and the identification in the lineup (which took place on September 9th, 2001). Twersky Aff., 2; Opp., 10, 18-21.

Furthermore, none of the "suggestive" events identified by Petitioner are sufficient to give rise to a substantial likelihood of irreparable misidentification when weighed against the *Biggers* factors indicating reliability here. Federal courts have found identifications reliable where there were seven months between the crime and the confrontation, *Biggers*, 409 U.S. at 201; where witnesses viewed pictures of the defendant or saw the defendant alone before seeing the defendant in a lineup, *Concepcion*, 983 F.2d at 378 (witnesses saw one defendant in the hospital before the lineup and saw a photo of another defendant before the lineup), *see also Epps v. Ercole*, 09-CV-4802, 2013 WL 2158582, at *5, *10 (S.D.N.Y. May 17, 2013) (Maas, Mag. J.) (finding lineup identification did not need to be suppressed when witness saw photos of the

11

suspect before the lineup); where witnesses were together when they viewed pictures of possible suspects, *Epps*, 2013 WL 2158582, at *5; where there were physical dissimilarities, such as of height and weight, between the defendant and the fillers in the lineup, *Epps*, 2013 WL 2158582, at *5, *see also Washington v. Artus*, 07-CV-7769, 2013 WL 1285877, at *11-12 (S.D.N.Y. Mar. 29, 2013) (Maas, Mag. J.) (finding unconvincing allegations that petitioner was "younger, shorter, and smaller than the fillers"); *Johnson v. Ercole*, 08-CV-1268, 2008 WL 4372649, at *5 (E.D.N.Y. Sept. 22, 2008) (Gleeson, J.); and where one witness discussed the lineup with another before the second witness made her identification, *Epps*, 2013 WL 2158582, at *5. The aforementioned cases involve identification procedures similar to, or much more clearly suggestive than, those in Petitioner's case. As such, the Court does not find that the state courts' rejections of Petitioner's *Wade* claim were contrary to or an unreasonable application of clearly established federal law.

### 3. Petitioner's *Huntley* Claim is Without Merit.

While there is a rebuttable presumption that a state court has considered federal law issues in its adjudication, "[i]f a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the [merits] of the matter" *Johnson v. Williams*, 133 S.Ct. 1088, 1097 (2013); *Cone v. Bell*, 556 U.S. 449, 472 (2009). Petitioner's *Huntley* claim was not adjudicated on the merits by the Second Department, despite having been presented by Petitioner in his appeal. Brief of Def.-Appel., 33. The Second Department did not address or mention the voluntariness of Petitioner's statement at all, either as a matter of state law or as a matter of federal law, although it did discuss each of Petitioner's other claims. *Parham*, 904 N.Y.S.2d

144. Therefore the AEDPA standard applied to the *Wade* claim does not apply to the *Huntley* claim, and this Court will review the *Huntley* claim *de novo*.[7]

At a *Huntley* hearing, the People have the burden of proving beyond a reasonable doubt the voluntariness of a statement and of the waiver of any constitutional right. *People v. Anderson*, 364 N.E.2d 1318, 1320 (N.Y. 1977); *People v. Huntley*, 204 N.E.2d 179, 183 (N.Y. 1965). Petitioner claimed that the People did not meet their burden of showing that the statement Petitioner made to the police was voluntary. In support of this position, Petitioner stated that he had been held for six and a half hours in police custody before questioning, that Detective Carmosin (who took Petitioner's statement) did not make any inquiries as to whether Petitioner had been allowed to use the bathroom, eat, or smoke, and that his length of time in custody prior to his statement constituted psychological coercion. Brief of Def.-Appel., 37. However, Detective Carmosin testified at the *Huntley* hearing that he read Petitioner his *Miranda*[8] warnings before questioning him, that Petitioner indicated that he understood the warnings, and that Petitioner agreed to waive his *Miranda* rights. Furthermore, Petitioner gave oral, written, and videotaped exculpatory statements. Petitioner never admitted guilt, and there is no evidence that he was threatened, coerced, or psychologically pressured into making his statement. Dkt. 8-3, Suppression Hearing at 13-44. Detective Carmosin stated that he never personally inquired as to whether Petitioner had been allowed to use the bathroom, eat, or smoke, but Petitioner has never claimed on the record that he was *not* allowed to do any of these things. The only fact that Petitioner presented to challenge voluntariness is that he was in custody for six and a half hours.

---

[7] The government concedes *de novo* review of this question, citing *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Opp., 32.

[8] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

13

To determine whether Petitioner's statement and waiver of *Miranda* rights were voluntary beyond a reasonable doubt, the Court looks at the totality of the circumstances. *See Arizona v. Fulminante*, 499 U.S. 279, 285-288 (1991) (applying test to determine that confession was coerced). Detective Carmosin gave uncontradicted testimony that Petitioner was read his *Miranda* rights and indicated that he understood those rights before waiving them. Furthermore, all of Petitioner's statements were exculpatory, which suggests that he was not intimidated into giving the police the answers they wished. The fact that Petitioner was in custody for six and a half hours does not by itself indicate coercion. This Court finds that Detective Carmosin's unchallenged testimony, and the lack of any circumstances that cast doubt on said testimony, are sufficient to show beyond a reasonable doubt that Petitioner's statement and waiver of his *Miranda* rights were made voluntarily. As such, Petitioner's *Huntley* claim is without merit.

### B. Petitioner's Sixth Amendment Right to Call a Witness Was Not Violated.

At trial, Petitioner's counsel requested a subpoena of Cecil Holloway as a defense witness on the grounds that Mr. Holloway could testify that one of the prosecution's witnesses, Anita Jones, was a much more frequent and extensive user of marijuana than she had claimed to be in court. Petitioner also claimed that Mr. Holloway could testify to Ms. Jones's drinking and her familiarity with Petitioner. Brief of Def-Appel., at 40-43. The trial court denied Petitioner's request and the Second Department upheld this denial. Petitioner claims that these decisions violated his Sixth Amendment right to call a witness in his defense. Since this claim was filed on direct appeal, *id.*, and fully litigated on the merits, resulting in a denial by the Second Department, *Parham*, 904 N.Y.S.2d at 146, it can only be granted if the state court decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d) (West 2015).

14

The right to present witnesses in one's own defense has "long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294-95 (1973). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). This right is "not without limitation," but State restrictions "may not be arbitrary or disproportionate to the interests they are designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 55-56 (1987). In New York, a trial judge deciding whether to admit extrinsic evidence contradicting a witness's testimony must look at "whether the assertions that the impeaching party seeks to contradict are themselves material or collateral." *Justice v. Hoke*, 90 F.3d 43, 48 (2d Cir. 1996) (citing *Rosario v. Kuhlman*, 839 F.2d 918, 925-926 (2d Cir. 1988)). Material evidence has been defined by the Supreme Court as evidence that might create a reasonable doubt of a defendant's guilt where it did not previously exist. *United States v. Agurs*, 427 U.S. 97, 112-113 (1976). Similarly, the Second Circuit has noted that "'a fact is not a collateral matter if it could be shown in evidence for any purpose independent of the contradiction.'" *Justice v. Hoke*, 90 F.3d at 48 (quoting *People v. Schwartzman*, 247 N.E.2d 642, 246 (N.Y. 1969)).

Here, even if Mr. Holloway had testified that Ms. Jones was a frequent marijuana user or was better acquainted with Petitioner, this would only serve to impeach her credibility. Furthermore, Ms Jones was not the only witness to identify Petitioner as the perpetrator. Opp., 18-21. Although the Supreme Court has found that denying a defendant the right to present witnesses in his own defense may violate his constitutional rights, the witnesses in those cases were testifying on matters such as the voluntariness of the defendant's confession, or had themselves confessed to the crime. *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 685-686, 689-691 (1986); *Chambers v. Mississippi*, 410 U.S. at 289-290, 302-303. Here, the exclusion of Mr.

Holloway as a witness to impeach Ms. Jones's credibility does not implicate any question so relevant to Petitioner's innocence or guilt. As such, the Court finds that Petitioner's Sixth Amendment claim is meritless.

### C. Petitioner's Claim that the Trial Court Erred in Denying His Motion for a Mistrial is Without Merit.

Since this claim was filed on direct appeal, Brief of Def.-Appel. at 46, and fully litigated on the merits, resulting in a denial by the Second Department, *Parham*, 904 N.Y.S.2d at 146-47, it can only be granted if the state court decision was contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d) (West 2015). Furthermore, a trial court's determination of whether or not to declare a mistrial is accorded the "highest degree of respect." *Arizona v. Washington*, 434 U.S. 497, 511 (1978).

Here, the trial court struck from the record the improper comments of a prosecution witness, former Assistant District Attorney Farkas, in which Mr. Farkas vouched for the credibility of prosecution witness Floyd Taborn. Furthermore, the trial court issued a curative instruction to the jury regarding Mr. Farkas's comments. The Second Department held that these actions were sufficient to protect Petitioner's rights. *Parham*, 904 N.Y.S.2d at 146.

The Second Circuit upheld a denial of mistrial where the district court gave an *Allen*[9] charge, the jury notes may have referenced deadlock, one juror had an ill father, and another juror had pressing business matters. *United States v. Dede*, 321 F. App'x 35, 37 (2d Cir. 2009). Furthermore, in *United States v. Fasano*, 25 F. App'x. 23, 24 (2d Cir. 2001), the Second Circuit held that a curative instruction was sufficient to prevent any prejudice to defendant resulting from properly admitted evidence of similar acts. In light of these precedents and the respect

---

[9] *See Allen v. United States*, 164 U.S. 492 (1896).

16

required by *Washington*, 434 U.S. at 511, for the trial court's decisions regarding mistrials, the Court finds that the state courts' rulings in Petitioner's case did not violate federal law.

### D. Petitioner's Claim that the Evidence Against Him Was Legally Insufficient For Him To Be Found Guilty Beyond A Reasonable Doubt Is Without Merit.

This claim was filed on direct appeal, Brief of Def.-Appel. at 57, and fully litigated on the merits, resulting in a denial by the Second Department, *Parham*, 904 N.Y.S.2d at 146. Therefore, it can only be granted if the state court decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d) (West 2015). A *habeas* petitioner who wishes to overturn a state conviction for legal insufficiency of evidence must show that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner has not made such a showing. He has merely claimed that "the testimony of the witnesses in this case, especially that of James Taylor aka Floyd Taborn, Anita Jones[,] and Demetri Gillard, were so unworthy of belief as to be incredible as a matter of law." Brief of Def.-Appel. at 57. The Court disagrees. A rational jury could have found that the witnesses were credible and that Petitioner or his accomplice shot Green in the head in the course of and in furtherance of a robbery or burglary or of immediate flight therefrom, which constitute the elements of second-degree murder under N.Y. Penal Law §125.25(3). *See* N.Y. Penal L. §125.25(3) (McKinney 2015). The Second Department's refusal to overturn the verdict therefore is not contrary to, or an unreasonable application of, Supreme Court-established federal law.

### CONCLUSION

Petitioner's application for a writ of habeas corpus is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c) (West 2015). The Clerk of the Court is directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

HON. WILLIAM F. KUNTZ,

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 22, 2015
Brooklyn, New York